IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| U4, LLC,<br><br>    *Plaintiff,*<br><br>vs.<br><br>SONIC DRIVE-IN of PITTSBURG, LLC,<br>JOHN R. MARTIN, and<br>WAYNE McCABE<br><br>    *Defendants.* | Case No. 16-1269-EFM-GEB |

**MEMORANDUM AND ORDER**

Sonic Drive-In of Pittsburg, LLC ("Sonic") was owned by three members: John Martin, Wayne McCabe, and R&L Carpenter Enterprises, Inc. ("R&L"). On April 5, 2016, R&L ostensibly sold its membership interest to U4, LLC ("U4"). U4 now brings this action against Sonic, Martin, and McCabe, asking the Court to enforce its purported purchase of R&L's membership interest. U4 seeks summary judgment on the issue of whether its purchase of R&L's sale of its membership interest was valid (Doc. 16). Sonic, Martin, and McCabe responded with a cross-motion for summary judgment, arguing that the purchase is unenforceable (Doc. 22).

But alternatively, Sonic, Martin, and McCabe ask the Court to stay these proceedings until a parallel state court action is resolved. They contend that before R&L allegedly sold its

membership interest to U4, R&L offered to sell that same interest to Martin and McCabe. Martin and McCabe claim that they accepted R&L's offer, and have sued R&L in state court seeking specific performance. In other words, they want the state court to enforce their alleged purchase of R&L's membership interest. The state court has exclusive jurisdiction over the dispute between Sonic, Martin, McCabe, and R&L.

And so, this Court is faced with the issue of whether R&L sold its membership interest to U4, while the state court is faced with the issue of whether R&L had already agreed to sale that same interest to Martin and McCabe. As explained in more detail below, this Court cannot completely or efficiently resolve the instant dispute until the state court matter is resolved. For that reason, the Court grants Sonic's, Martin's, and McCabe's motion for stay.

## I. Factual and Procedural Background

Before April 5, 2016, Sonic was owned by three members: Martin owned 53%, McCabe owned 22%, and R&L owned 25%. Sonic is governed by an operating agreement that restricts the members' right to sell their membership interests to third parties by providing the other members with a right of first refusal.

On November 3, 2015, R&L's counsel sent Martin and McCabe an email regarding R&L's desire to sell its membership interest in Sonic. R&L offered to sell its membership interest to Martin and McCabe for $747,978. R&L also offered to sell the real estate upon which Sonic operated for $1,151,120. Attached to the email were two separate purchase orders, reflecting each proposed sale.

From November 11 through November 23, the members exchanged emails regarding R&L's proposal. Martin and McCabe explained that it could not justify the purchase of the real estate for the price of $1,151,120. They stated that "[w]e feel that we should have the option to

purchase the 25% membership interest without the contingency of the simultaneous purchase of the real estate." Therefore, Martin and McCabe closed their first response to R&L's offer by stating that they declined the offer to purchase the real estate, but accepted the offer to purchase R&L's membership interest. R&L replied, inviting Martin and McCabe to propose a price for the real estate. The reply did not acknowledge Martin and McCabe's apparent acceptance of the offer to only purchase R&L's membership interests.

Martin and McCabe responded to R&L's email, proposing a purchase price of $916,780.13 for the real estate. They again inquired as to whether their "purchase of the 25% membership interest [is] contingent upon the simultaneous purchase of the real estate." R&L quickly responded, noting that R&L "will insist the sale include both the membership interest and the real estate." More than a week later, R&L confirmed that it would only sell its membership interests if the real estate also sold. R&L asked for some time to "mull over" Martin and McCabe's counteroffer on the real estate.

On December 9, R&L gave Martin and McCabe written notice of its intent to sell its 25% membership interest to U4 for $997,803.66. R&L acknowledged that the proposed sale was subject to Martin and McCabe's right of first refusal, which they had 60 days to exercise. On April 7, 2016, R&L notified Martin and McCabe that it had sold its membership interests in Sonic to U4 for $997,803.66, and the real estate upon which it operated to Ulmstattd Property Management, L.P., for $922,000 on April 5. But Martin and McCabe refuse to recognize the ostensible sale. They contend that R&L's sale of its membership interest to U4 was invalid and unenforceable.

Litigation followed. First, on June 29, 2016, U4 filed the instant action in this Court. In its complaint, U4 names Sonic, Martin, and McCabe as defendants.[1] U4 alleges that when R&L informed Martin and McCabe of its intent to sell its interest to U4 on December 9, 2015, they failed to exercise their right of first refusal. Therefore, U4 contends that its purchase of R&L's membership interest is valid and enforceable. Accordingly, U4 seeks a judgment from this Court declaring that U4 owns a 25% membership interest in the Sonic and is entitled to all the rights and privileges that accompany such interest. U4 also seeks damages to compensate for profits that it was entitled to, but has not received, since April 5, 2016.

After U4 initiated this action, Sonic, Martin, and McCabe sued R&L and Roger Carpenter[2] in the District Court of Crawford County, Kansas. In that state court action, which was filed on October 13, 2016, Sonic, Martin, and McCabe allege that they exercised their right of first refusal by accepting R&L's offer to sell its interest for $747,978 in November 2016. According to Sonic, Martin, and McCabe, they agreed to purchased R&L's membership interest in November 2015, before R&L purportedly sold that same interest to U4 the following April. For that reason, Martin and McCabe refuse to recognize U4's supposed purchase of R&L's membership interest. In that state court action, Sonic, Martin, and McCabe seek specific performance; that is, they seek enforcement of their asserted purchase of the 25% membership interest in November 2015. On May 11, 2017, the Crawford County District Court issued a brief memorandum and order denying R&L's motion for summary judgment in that case. The court

---

[1] U4 is a Missouri company, and Sonic, Martin, and McCabe are all Kansas entities. Therefore, this Court has jurisdiction due to the parties' diversity of citizenship. R&L, a defendant in the state court action, is a Kansas corporation. Therefore, the Court would lack jurisdiction over an action in which Martin and McCabe sued R&L.

[2] From the record, it appears that Roger Carpenter is an owner of R&L.

determined that there were questions of fact surrounding the correspondence between the parties regarding the sale of R&L's membership interests.

In the instant case, U4 has moved for summary judgment. In its motion, U4 argues that the uncontroverted facts demonstrate that neither Martin nor McCabe exercised their right of first refusal when R&L notified them of its intent to sell to U4 on December 9, 2015. Thus, U4 contends that it legally purchased R&L's membership interest on April 5, 2016. Sonic, Martin, and McCabe have filed a cross-motion for summary judgment, arguing that R&L failed to comply with the operating agreement when it sought to sell its interest to U4. Alternatively, they argue that this Court should stay this action pending the outcome of the state proceedings.

## II. Discussion

The Court begins with Sonic's motion for stay, because if a stay is indeed appropriate, then there is nothing more for the Court to do at this time. Sonic[3] argues that the standard announced in *Brillhart v. Excess Ins. Co.*[4] applies in this case. *Brillhart* gives a federal court the discretion to withhold its exercise of jurisdiction over an action for a declaratory judgment.[5] The *Brillhart* doctrine is often invoked "[w]hen the issue of contemporaneous state and federal parallel proceedings is raised in a federal declaratory judgment action."[6] *Brillhart* applies where declaratory relief is the sole remedy sought.[7] On the other hand, when a plaintiff seeks both declaratory and coercive relief, the Court applies the *Colorado River* doctrine, rather than

---

[3] For brevity's sake, in its analysis the Court will refer to Sonic, Martin, and McCabe simply as "Sonic."

[4] 316 U.S. 491 (1942).

[5] *United States v. City of Las Cruces*, 289 F.3d 1170, 1180 (10th Cir. 2002).

[6] *Springer v. Thomas*, 2015 WL 2449579, at *6 (D. Kan. 2015).

[7] *City of Las Cruces*, 289 F.3d at 1181.

*Brillhart*.[8] Like *Brillhart*, *Colorado River* allows a district court to dismiss or stay a federal action in deference to parallel state court proceedings.[9] Although often considered an abstention doctrine, "*Colorado River* is not truly an abstention doctrine because it 'springs from the desire for judicial economy, rather than from constitutional concerns about federal-state comity.' "[10] With that in mind, *Colorado River* is "considerably more limited" than traditional abstention doctrines.[11] Under *Colorado River*, the Court may only decline to exercise jurisdiction "in 'exceptional' circumstances."[12] In its complaint, U4 seeks declaratory relief: specifically, it seeks a declaration that it is the rightful owner of a 25% membership interest in Sonic. But U4 also seeks damages to compensate for lost profits. Because it seeks damages in addition to a declaratory judgment, U4 argues that *Colorado River*, and not *Brillhart*, applies. Sonic disagrees, arguing that damages are not "coercive relief."

The issue of whether *Brillhart* or *Colorado River* applies to claims for both declaratory and non-declaratory relief has given rise to a circuit split. The Fifth Circuit has adopted a bright-line rule: *Brillhart* applies only when declaratory relief is the sole remedy sought. In *New England Insurance Company v. Barnett*,[13] the Fifth Circuit held that *Brillhart* did not apply in a declaratory judgment action that included a counterclaim for damages, because that action

---

[8] *Id; Springer*, 2015 WL 2449579, at *6.

[9] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 819-20 (1976).

[10] *Marie v. Moser*, 65 F. Supp. 3d 1175, 1198 (D. Kan. 2014) (quoting *Reinhardt v. Kelly*, 164 F.3d 1296, 1303 (10th Cir. 1999)).

[11] *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1189 (10th Cir. 2015) (quoting *Colo. River*, 424 U.S. at 818).

[12] *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) (quoting *Colo. River*, 424 U.S. at 818).

[13] 561 F.3d 392 (5th Cir. 2009).

contained claims for both declarative and coercive relief.[14] On the other hand, the Seventh and Ninth Circuits have adopted a different approach. Those circuits allow the district court to apply *Brillhart* where the claim for non-declaratory relief depends on the claim for declaratory relief.[15] Sonic asks the Court to adopt the approach of the Seventh and Ninth Circuits, and apply *Brillhart* because "U4's breach of contract claim can only be viable if it first prevails on its declaratory judgment claim."

The Tenth Circuit has not yet addressed this circuit split head on. But it has favorably cited the Fifth Circuit in noting that "[i]f the plaintiff *only* requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment for the purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit."[16] Furthermore, this Court has favorably cited *Barnett* in the past, and believes that the Tenth Circuit would continue to follow the Fifth Circuit on this issue.[17] Accordingly, the Court will adopt the Fifth Circuit's approach, as opposed to that of the Second and Ninth Circuit. Because U4 seeks damages in addition to a declaratory judgment, *Brillhart* does not apply here.[18] Rather, the Court will apply *Colorado River* in considering Sonic's motion for stay.

---

[14] *Id.* at 397.

[15] *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 716 (7th Cir. 2009) ("[T]he district court should determine whether the claims seeking non-declaratory relief are independent of the declaratory claim. If they are not, the court can exercise its discretion under [*Brillhart*] and abstain from hearing the entire action."); *see also United Nat'l Ins. Co. v. R&D Latex*, 242 F.3d 1102, 1112 (9th Cir. 2001).

[16] *City of Las Cruces*, 289 F.3d at 1181 (emphasis added); *see also R.R. St. & Co.*, 569 F.3d at 715 ("The Second and Tenth Circuits have agreed with the Fifth Circuit's approach, albeit in dicta.").

[17] *Springer*, 2015 WL 2449579, at *6.

[18] *Id.* ("[T]he court finds that the plaintiff Springer's coercive claims for damages preclude applying here the broader and more discretionary *Brillhart* standard.").

## A. The *Colorado River* Factors

The *Colorado River* doctrine serves "to avoid duplicative litigation."[19] "*Colorado River* concerns itself with efficiency and economy. Its goal is to 'preserve judicial resources.' "[20] Under *Colorado River*, only exceptional circumstances warrant a stay or dismissal of the federal action.[21] The parties agree that in this case, the state and federal proceedings are parallel.[22] Faced with parallel proceedings, the Court must determine whether deference to the state court is appropriate under the particular circumstances.[23]

*Colorado River* identified four nonexclusive factors that the Court should consider in deciding whether to exercise jurisdiction.[24] These factors are: (1) simultaneous jurisdiction over a single res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the courts obtained jurisdiction.[25] Subsequently, courts have identified additional factors for the Court to consider: (5) whether federal law

---

[19] *Rienhardt*, 164 F.3d at 1302.

[20] *D.A. Osguthorpe Family P'Ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Rienhardt*, 164 F.3d at 1302).

[21] *Colo. River*, 424 U.S. at 818; *see also* 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, *Federal Practice and Procedure*, § 4247, 454 (3d ed. 2007) ("The teaching of the Colorado River case was that only 'exceptional' circumstances will permit a federal court to refrain from exercising its jurisdiction for reasons of wise judicial administration due to the presence of a concurrent state proceeding.").

[22] *Fox*, 16 F.3d at 1081 ("Before examining [the *Colorado River*] factors, however, a federal court must first determine whether the state and federal proceedings are parallel.").

[23] *Id.* at 1082.

[24] *Id.*

[25] *Id.* (citing *Colo. River*, 424 U.S. at 818); *see also Rienhardt*, 164 F.3d at 1303.

provides the rule of decision on the merits; and (6) the adequacy of the state court action to protect the federal plaintiff's rights.[26]

   1.   *Simultaneous Jurisdiction Over a Single Res*

In this case, U4 is seeking to recover 25% of Sonic's profits since April 5, 2016. On January 30, 2017, this Court issued a preliminary injunction, the terms of which had been previously agreed on by the parties. In that injunction, the Court ordered that Sonic deposit the disputed profits—those tied to the 25% membership interest at issue—into a trust account "until further order of the Court." In the state court action, Sonic alleges that Martin and McCabe exercised their right of first refusal, and therefore, are the rightful owners of the 25% membership interest previously owned by R&L. Accordingly, under Sonic's theory, R&L's subsequent sale to U4 was invalid. Sonic seeks specific performance in the form of enforcement of its right to first refusal. If Martin and McCabe prevail in state court, they would be entitled to the share of Sonic's profits since April 5, 2016, that previously would have gone to R&L.

Under the above facts, this factor weighs against staying the case. Where there are parallel state and federal actions, and the state court has already assumed jurisdiction over a res, the first factor will weigh in favor of a stay.[27] But in this case, the opposite is true. A quarter of Sonic's profits, since April 5, 2016, are at issue. This Court has ordered that those profits be held in trust in order to "maintain the *status quo* during this litigation." A resolution of the state

---

[26] *MacIntyre v. JP Morgan Chase Bank*, 644 F. App'x 806, 807 (10th Cir. 2016). Courts have also listed "the vexatious or reactive nature of either the federal or the state action" as a factor to consider. But that factor has not been uniformly applied. *See, e.g.*, *D..A. Ogusthorpe*, 705 F.3d at 1234-36; *Foxfield Villa Assocs., LLC v. Reginer*, 918 F. Supp. 2d 1192, 1198-1201 (D. Kan. 2013). The parties did not address that factor in the briefs, and the Court finds it inapplicable to these facts. Accordingly, the Court will not include it in its analysis.

[27] *Foxfield Villa*, 918 F.Supp. 2d at 1199; s*ee also Brizendine v. Randall*, 2017 WL 1250805, at *4 (D. Kan. 2017).

court action would necessarily result in an additional, and possibly conflicting, order regarding the disposition of property over which this Court has already assumed jurisdiction. For that reason, this factor weighs against staying the present action.

*2. The Inconvenience of the Federal Forum*

If the federal forum is less convenient than the state forum, then this factor balances in favor of a stay.[28] The second factor focuses on the physical proximity of the parties, evidence, and witnesses to the federal forum.[29] Most of the witnesses and parties are located in and around Crawford County. And so, the parties, evidence, and witnesses are physically closer to the state court in Pittsburg than the federal court in Wichita. With that in mind, this factor technically weighs in favor of staying the federal case. But the Court is not greatly moved by this factor. Both parties are represented by Wichita law firms, and the parties will be not be greatly troubled if they are required to make the relatively short trip from Pittsburg to Wichita in order to try their case.

*3. The Desirability of Avoiding Piecemeal Litigation*

The avoidance of piecemeal litigation is the paramount consideration under *Colorado River*.[30] Although they feature different parties and slightly different transactions, both the state and federal case seek to answer the same question: to whom did R&L sell its 25% membership interest? In state court, Sonic is suing R&L—the seller—arguing that Martin and McCabe exercised their right of first refusal in November 2015. Accordingly, Sonic is seeking specific performance: enforcement of its agreement to purchase of R&L's 25% membership interest. In

---

[28] *Gerbino v. Sprint Nextel Corp.*, 2013 WL 2405558, at *6 (D. Kan. 2013) (citation omitted).

[29] *Foxfield Villa*, 918 F. Supp. 2d at 1199.

[30] *D.A. Ogusthorpe*, 705 F.3d at 1234.

the federal action, U4 also alleges that it purchased R&L's 25% membership interest. U4 contends that Martin and McCabe failed to exercise their right of first refusal when they were notified of R&L's intent to sale to U4 in December 2015. Therefore, U4 argues that its purchase of R&L's membership interest in April 2016 complied with Sonic's operating agreement. In the instant action, U4 seeks a declaration that it is the rightful owner of the contested membership interest. Both this Court and the state court are faced with a plaintiff that believes it has the right to own the same 25% interest in Sonic. Given this framework, duplicative litigation is inevitable.

Duplicative litigation wastes the resources of both the parties and the courts.[31] U4 recognizes this fact, but still argues that this factor weighs against staying the proceedings. U4 states:

> But most importantly, there is also a substantial risk of piecemeal litigation. The competing cases involve the same issue—whether R&L Carpenter's sale of its membership interest in [Sonic] Pittsburg was valid. [A stay in] the litigation, particularly when dispositive motions are ripe and discovery is closed in the present action, would result in duplicative, piecemeal litigation.

U4's argument seems to be that this Court must act quickly, rather than staying proceedings, to avoid piecemeal litigation. But at this point, piecemeal litigation is already occurring. The parties' summary judgment motions are ripe for consideration in the instant case, but summary judgment has already been denied in state court. Because duplicative litigation cannot be avoided, the best that this Court can do is take the path that has the best chance of avoiding further, and potentially unnecessary, duplicative litigation. With that in mind, this factor weighs strongly in favor of a stay.

---

[31] *See Gerbino*, 2013 WL 2405558 at *8; *Foxfield Villa*, 918 F. Supp. 2d at 1199; *Heath Care & Retirement Corp. of Am. v. Heartland Home Care, Inc.*, 324 F. Supp. 2d 1202, 1206 (D. Kan. 2004).

If this Court awarded U4 the remedy it seeks on summary judgment, then the Court would enforce R&L's sale to U4. But the issue of whether Martin and McCabe had earlier exercised their right of first refusal would remain unresolved in state court. And if Sonic would prevail in state court, then that court would presumably enforce R&L's earlier sale of its 25% membership to Martin and McCabe while this Court had previously enforced R&L's later sale of that same interest to U4. These results would be incompatible and would certainly give rise to further litigation.

Alternatively, if this Court found for Sonic, and determined that R&L had not legally sold its membership interest to U4, the issue of whether Sonic is entitled to have R&L's alleged sale to Martin and McCabe enforced would still need to be resolved in state court. R&L is not a party in this case, and the Court lacks the authority to order its specific performance. Regardless of how this matter is determined, the state court will still have to sort through the dealings between R&L, Martin, and McCabe that came before R&L's purported sale to U4. And because R&L's subsequent attempt to sell to U4 would have no preclusive effect on the issue of whether it had already agreed to sell that interest to Martin and McCabe, there is no possibility of issue preclusion resulting in this Court's decision dictating an outcome in state court. No matter how the federal case ends up, if the instant action is resolved before the state court action, further litigation will be required.

On the other hand, if Sonic prevails in state court, and that court enforces R&L's agreement to sell its membership interest to Martin and McCabe, then the issue in the present case—whether R&L later sold that same interest to U4—likely can be disposed of rather quickly. The Court will not make a conclusive finding with regards to issue preclusion at this time. But it is worth noting that under these circumstances, issue preclusion could possibly apply to the issue

of whether R&L had already sold its membership interest before it sold that same interest to U4.[32] R&L cannot sell something to U4 that it had already sold to someone else. Therefore, the question of whether U4 purchased the membership interest depends on the question of whether R&L had already agreed to sale that same interest to Martin and McCabe. Conversely, if R&L prevails in state court, then this Court's resolution of the issues surrounding R&L's subsequent transaction with U4 will constitute a final determination as to rights of all of the parties involved in these disputes.

All in all, duplicative litigation is unavoidable. But before this Court can determine whether R&L sold its membership interest to U4, the state court must first determine whether R&L had already sold that same interest. Once that issue is resolved, then the federal action can be disposed of with more efficiency and finality. Accordingly, a stay in the federal action will promote the greatest judicial economy, and this factor weighs strongly in favor a stay.

  4. *The Order in which the Courts Gained Jurisdiction*

"If a state court obtains jurisdiction of a case before a federal court obtains jurisdiction of a parallel case, this factor weighs in favor of staying federal case."[33] But in weighing this factor, the Court should look at more than simply which party filed first. The Court must also consider how much progress has been made in the two actions.[34] Therefore, even though the federal case

---

[32] Issue preclusion applies when (1) the previously decided issue is identical to one presented in the current action; (2) the previous action reached the final judgment; (3) the party against which the doctrine is invoked was a party or in privity with a party from the prior adjudication; and (4) the party against whom the doctrine is invoked had a full and fair opportunity to litigate the issue in the prior action. *Rhoten v. Dickson*, 290 Kan. 92, 223 P.2d 786, 801 (2010). Privity has been held to exist with regards to parties "with successive relationship to the same property or right (i.e seller and buyer)." *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989).

[33] *Health Care & Retirement*, 324 F. Supp. 2d at 1206 (citing *Colo. River*, 424 U.S. at 818).

[34] *D.A. Osgusthorpe*, 705 F.3d at 1235 (citing *Moses H. Cone*, 460 U.S. at 21).

was filed first, this factor might be more mixed if the state court action has progressed further to this point.[35]

Here, U4 initiated the instant action on June 29, 2016. Sonic did not file the state action until October 13, 2016. The fact that this Court was the first to gain jurisdiction weighs against a stay. But the issue of which case has progressed further is not as straightforward. In the federal case, discovery closed on February 1, 2017. The dispositive motions deadline was in March, and the parties' cross-motions for summary judgment are now ripe for consideration. Trial for the instant case is set for October 24, 2017. As for the state court action, this Court lacks the information required to thoroughly compare its progress to the instant case. But on May 11, 2017, the state court issued a memorandum and order denying R&L's motion for summary judgment in that case. In the instant case, the summary judgment motions are ripe for consideration but are only now being decided. Therefore, one could also argue that the state court action has now progressed further than the instant case, although it is unclear whether a trial date has been set in the state court action.

Ultimately, this factor weighs slightly against a stay, because the federal action was filed first. But considering that both cases have progressed to, or past, the point of summary judgment, this factor has little bearing in the Court's analysis.

   5.   *Whether Federal Law Governs the Merits*

In its complaint, U4 states that Sonic, Martin, and McCabe "have breached the Pittsburg Sonic's operating agreement, deviated from their fiduciary duties, and otherwise violated Kansas

---

[35] *Foxfield Villa*, 918 F. Supp. 2d at 1199-1200.

law by refusing to recognize" its 25% membership interest. The complaint contains no federal claims. Accordingly, this factor weighs in favor of a stay.[36]

### 6. *The Adequacy of the State Court Action*

When a court decides to stay a case under *Colorado River*, it "essentially determines that the parallel state-court litigation 'will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.' "[37] Unfortunately, at this point neither the federal nor state court can completely resolve the issues between the parties. But as noted in the Court's consideration of the third factor, of the parallel proceedings at issue here, resolution of the state court action will allow for a more complete and prompt resolution of the issues between the parties. Before this Court can determine whether R&L sold its membership interest to U4, the state court must first determine whether R&L had already agreed to sale that same interest to Martin and McCabe. Resolution of that dispute will allow this Court to completely dispose of the parties' dispute. On the other hand, if this Court moves forward before the state action is resolved, there is no possibility of issue preclusion impacting the parallel action, and there will still be issues to sort out in state court. For these reasons, this factor weighs heavily in favor of a stay.

## B. Balancing the Factors

Of the six above factors, four weigh in favor of staying the case. And two of those factors—the avoidance of piecemeal litigation and the adequacy of the state court action—carry

---

[36] *Cf. Health Care & Retirement*, 324 F. Supp. 2d at 1206 (finding that this factor weighed against a stay when the plaintiff's claims arose under federal law).

[37] *Gerbino*, 2013 WL 2405558, at *6 (quoting *Moses H. Cone*, 460 U.S. at 28).

substantial weight. Further, the two factors that weigh against a stay are of little persuasive value under the present facts.

After carefully considering each factor, the Court finds that the exceptional circumstances in this case warrant a stay of the instant action. Before this Court can determine whether R&L sold its 25% membership interest to U4, the state court must first determine whether R&L had already agreed to sale that same interest to Martin and McCabe. The principles underlying *Colorado River*—wise judicial administration, the conservation of judicial resources, and the comprehensive disposition of litigation—are all furthered by a stay in this case.

For these, the Court exercises its inherent authority to stay the instant case pending the outcome of the state court case. The parties shall file a notice of the state court judgment within 30 days after it is entered.

**IT IS THEREFORE ORDERED** that Sonic's, Martin's, and McCabe's Motion for Summary Judgment or for Stay (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE.** The Court makes no findings on the merits of the portion of the motion requesting summary judgment.

**IT IS FURTHER ORDERED** that U4's Motion for Summary Judgment (Doc. 16) is **DENIED WITHOUT PREJUDICE.** The Court makes no findings on the merits of the motion.

**IT IS SO ORDERED**.

Dated this 31st day of July, 2017.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE